[Crim. No. 6491.    In Bank.    Mar. 11, 1960.]

THE PEOPLE, Respondent, v. LUIS MOYA, Appellant.

Burt M. Henson, under appointment by the Supreme Court, for Appellant.

A. L. Wirin, Gerald L. Rosen and Richard L. Lissner as Amici Curiae on behalf of Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Roy A. Gustafson, District Attorney (Ventura), for Respondent.

GIBSON, C. J.—Defendant and Augustine Baldonado were indicted jointly with Elizabeth Duncan for the murder of her daughter-in-law, Olga Duncan. Defendant pleaded guilty to murder in the first degree, and, upon a trial by jury on the sole issue of penalty, his punishment was fixed at death. His motion for a new trial was denied, and the appeal comes to us automatically under subdivision (b) of section 1239 of the Penal Code.[1]

A motion for a change of venue made by defendant on the ground that a fair and impartial trial could not be had in Ventura County was denied. In addition to the matters urged in *People* v. *Duncan, ante,* p. 803 [3 Cal.Rptr. 351, 350 P.2d 103], defendant relied on the assertedly adverse effect of the publicity given to the Duncan and Baldonado trials, which had preceded his own. We are of the opinion that he has not pointed to anything warranting a conclusion different from the one reached in the Duncan and Baldonado cases, where we held that the trial court did not abuse its discretion in refusing to order a change of venue. (*People* v. *Duncan, ante,* p. 803; *People* v. *Baldonado, post,* p. 824 [3 Cal.Rptr. 363, 350 P.2d 115].)

Defendant, who was born in 1938 in San Angelo, Texas, was provided with a good home by his parents but was in trouble at an early age. He has used narcotics consistently since he was 11 years old. At 12, he was frequenting houses of prostitution and started on a course of criminal conduct which extended until the commission of the crime in question. His past offenses have included theft, burglary, possession and smuggling of narcotics, and stabbing a person with a knife. He served several terms in jail and at least one in the penitentiary. He was not a cooperative prisoner and made several attempts to escape. His work record was "very spotty," and he had been "kept" by various women.

A few days after defendant was arrested, he asked to see a minister, and Reverend Floyd K. Gressett came to the jail in response to a call from a police officer. Defendant testified that when he talked to Reverend Gressett he got on his knees and for the first time in his life asked God to forgive

---

[1]Separate trials were given to Mrs. Duncan and Baldonado, and their punishment was also fixed at death. (See *People* v. *Duncan, ante,* p. 803 [3 Cal.Rptr. 351, 350 P.2d 103]; *People* v. *Baldonado, post,* p. 824 [3 Cal.Rptr. 363, 350 P.2d 115].)

him. Reverend Gressett decided that defendant was sincere and was ready to confess to God and man. Immediately thereafter defendant confessed to law enforcement officers that he murdered Olga. He testified that he believed he had been forgiven, that his religious feeling had increased, and that he was sorry he had killed Olga.

A psychiatrist, Dr. David R. M. Harvey, testified that defendant is a sociopathic personality who profits neither from experience nor punishment, is a constant danger to society, and is capable of murder "right now." Dr. Harvey said that a sincere religious belief is a good start toward rehabilitation, but that the period of time during which defendant held such belief was too short to permit a determination as to the validity of his conversion.

■ A tape recording of defendant's confession was played at the trial, and he contends that it was error to receive this evidence without a preliminary finding that the confession was free and voluntary. Defendant had pleaded guilty, and after the recordings were put in evidence he testified that the statements contained therein were true. In these circumstances he suffered no prejudice by reason of the failure to make a preliminary determination as to the voluntariness of his confession.

■ Defendant called Phillip W. Thatcher to testify as an expert with respect to the relationship between the acceptance of religion and the likelihood of rehabilitation. Thatcher had served two prison terms and while confined had accepted Christian principles. Since his release in 1941 he had devoted his life to working toward the rehabilitation of young boys in penal institutions and "Youth for Christ" camps. Defendant offered to prove that as a result of Thatcher's experience and conversations with defendant he believed that defendant had undergone a religious conversion similar to his own and that because of defendant's acceptance of the Christian religion he believed there was a good chance that defendant could be rehabilitated. The court did not err in excluding Thatcher's testimony. The effect of religious conversion upon rehabilitation is not a matter sufficiently beyond common experience that the opinion of an expert is required to assist the trier of fact. Moreover, Thatcher's testimony would have added little to the evidence before the jury. Defendant testified as to the effect of his religious conversion, and Reverend Gressett said that in his opinion defendant was sincere in the

acceptance of religious beliefs. Dr. Harvey declared that a sincere religious belief constituted a good start and that defendant had at least an average chance for rehabilitation.

For the purpose of showing defendant's remorse and his state of mind after the offense, he offered in evidence four tape recordings made during the period between his asserted religious conversion and the trial. One was of a conversation held by him with the news director of a radio station, and the others were of his conversations with persons engaged in religious work. The recordings were obviously self-serving. Moreover, defendant was permitted to testify concerning his remorse and his beliefs at the time of the conversations. Objection to this evidence was properly sustained.

There was no abuse of discretion in admitting over defendant's objections three photographs showing Olga's body covered with a thin layer of dirt and lying in a shallow grave. The photographs were far less gruesome than the facts of the killing and burial of Olga as recited by defendant.

The trial court properly excluded evidence, including a motion picture, offered to show how the death penalty is administered. The jury was instructed that the punishment of death is inflicted by means of lethal gas, and no useful purpose would have been served by presenting all the details to the jury.

The prosecution was permitted over defendant's objection to elicit the testimony of an officer of the State Board of Corrections that nearly 50 per cent of all prisoners released on parole have their paroles suspended within three years. This was error. The parole records of individuals convicted of felonies other than murder are inadmissible in the penalty trial of a defendant found guilty of first degree murder. (*People* v. *Purvis,* 52 Cal.2d 871, 885-887 [346 P.2d 22].) The witness was also permitted to testify, over defendant's objection, that a murderer sent to a penal institution at Vacaville had killed another inmate. This testimony was irrelevant and immaterial, and defendant's objection should have been sustained. However, we have concluded, after an examination of the entire record, that the judgment must be affirmed since it does not seem reasonably probable that in the absence of the errors a result more favorable to defendant would have been reached by the jury. (Cal. Const., art. VI, § 4½.)

The judgment and the order denying the motion for a new trial are affirmed.

Traynor, J., Spence, J., McComb, J., Peters, J., and White, J., concurred.

Schauer, J., concurred in the judgment.

Appellant's petition for a rehearing was denied April 5, 1960.