[Crim. No. 7069.   Second Dist., Div. One.   July 5, 1960.]

THE PEOPLE, Respondent, v. BERTRAND ROBERTS, Appellant.

Claude Vibart Worrell for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

FOURT, J.—In an information filed in Los Angeles County on May 19, 1959, the appellant was charged in four counts

with a violation of section 496 Penal Code (receiving stolen property). The jury found the appellant guilty as charged as to count I which related to some women's wearing apparel belonging to Harry Rubel and received on or about February 23, 1959, and count II which related to some women's apparel belonging to Lloyd Marks received on or about February 17, 1959. The appellant was found not guilty as to counts III and IV, which referred to a radio and a clock respectively. A motion for a new trial was made and denied. Proceedings were suspended and appellant was granted probation for five years, a part of the terms being that he spend the first nine months thereof in the county jail.

This appeal is from the order denying the motion for a new trial and the judgment (order granting probation).

A résumé of some of the facts is as follows:

Harry Rubel was a clothing salesman for Style Plus of California in February, 1959. On the 23rd of February, 1959, he had certain samples of women's clothes by Style Plus of California in his car. It was his practice to call on the trade, exhibit his samples of goods and take orders therefor. He left his car parked in front of 2722 South Main Street about 3 p.m. on February 23, 1959, and went into the factory. Upon his return to his car the wing window was broken, entry had been made into the car and his samples of wearing apparel were missing. About four weeks later he was notified by the police that they had located the garments in question. Rubel identified certain of the samples which had been taken from his car. One of the dresses was retained by the police and became an exhibit in this case. Rubel gave no one permission to enter his automobile or to take anything. The retail value of the dress in evidence would be from $8 to $9 and the wholesale value would be from $4.75 to $5.75.

With reference to count II, Lloyd Marks was a sales representative for Georgee Originals, a women's wearing apparel concern, on February 17, 1959. On that date he had certain samples of clothing in his car. He parked his car on Vermont near 85th Street. Upon his return to the automobile the wind wing was broken, the back door was unlocked and the bags with the dress samples and other items were gone. A two-piece ladies' outfit was identified by the witness as being one of the samples taken from his car on the day mentioned. When the outfit was located in appellant's place of business the label was partly torn and clipped out. It was not in such

condition at the time when it was stolen from Marks' car. The retail price of the garment would be from $17.95 to $19.95 and the wholesale price from $10.75 to $11.75. The particular garment in question was never produced by the manufacturer for general sale. No permission was given to anyone to enter the automobile or to take anything therefrom.

The third count had to do with a clock which was supposedly stolen on February 5, 1959, from an automobile of a salesman for a clock company. The wind wing of the automobile had been broken and the car entered without permission of the owner.

The fourth count had to do with a radio which was supposedly stolen from a school warehouse in December of 1958.

On March 7, 1959, Sergeant Nicholl and Officer Slattery of the Los Angeles Police Department went to the appellant's place of business known as ''Western Gift Shop'' located on South Western Avenue. The establishment was open for business and the officers walked in through the open doorway. The appellant and his wife were in the store. The officers had received a report of some of the items of wearing apparel heretofore mentioned as having been stolen. When they entered they saw a radio. They checked the merchandise on the racks and discovered the Style Plus of California dress herein referred to as Exhibit one and the Georgee Original garment, herein referred to as Exhibit two. The officers did not talk with appellant before they inspected the merchandise which was on public display in the store.

The officers then talked with the appellant in the presence of his wife. He was asked about the particular merchandise, namely exhibits one and two, and was asked as to where he had purchased them. He said at first that the Style Plus dresses were purchased on Los Angeles Street but he couldn't remember just where on the street, but that his bookkeeper had the papers. He said substantially the same thing with reference to the Georgee Original. He stated that he charged $6.75 for the Style Plus garment and that he thought he had paid around $3.65 or $3.75 for the same. There were over 30 dresses of the Style Plus type and there were 10 or 12 Georgee Originals in his stock. When Sergeant Nicholl indicated that he wanted to talk to the bookkeeper the appellant said that his wife would have the receipts. Mr. Rubel was called and appeared at the location of the appellant's business and in the presence of appellant identified his merchandise.

The appellant stated at first that the radio (Exhibit four) had been won in a crap game and later he told the officers that a friend of his had left it there with him. Later on the appellant stated that he had won the dresses in a crap game. He did not know the name of the person with whom he had played craps, stating that it was just a fellow who came into the shop. He secured no receipt from the person with whom he had supposedly engaged in the crap game.

Appellant contends that: (1) there was insufficient evidence to sustain the conviction; (2) "the judgment . . . based on different counts is void where defendant acquitted of receiving . . . other stolen goods at the same time for the reason that the offense is a single one;" (3) "the verdicts of guilty under counts I and II are inconsistent with verdicts of not guilty under counts III and IV . . . since the offense is a single one and the four alleged crimes are identical; therefore, verdict of acquittal is irreconcilable with verdict of conviction;" (4) "appellant deprived of a fair trial . . .;" (5) "a conviction may not be based on evidence turned up in a general and exploratory search without a search warrant at the time of arrest"; and (6) "court misdirected the jury . . ."

Considering the appellant's first contention with reference to the sufficiency of the evidence and without repeating all of the evidence heretofore related, it is sufficient to relate that on February 17, 1959, certain Georgee Originals (women's wearing apparel) were stolen from the automobile of Lloyd Marks. On February 23, 1959, certain Style Plus dresses were stolen from the car of Harry Rubel. On March 7, 1959, Sergeant Nicholl and another officer entered the place of business of appellant and discovered certain dresses, including among others the stolen dresses. The appellant said at first that he had purchased the items but that he did not remember where he had purchased the same. Later he stated that the dresses were won in a crap game from a salesman whose name he did not know.

Section 496 of the Penal Code provides in part as follows:

"1. Receiving; knowledge; concealment; punishment. Every person who buys or receives any property which has been stolen or which has been obtained in any manner constituting theft or extortion, knowing the same to be so stolen or obtained, or who conceals, withholds or aids in concealing or withholding any such property from the owner, is punishable

by imprisonment in a state prison for not more than 10 years, or in a county jail for not more than one year.''

There is no question as to the receipt of the stolen property. Appellant admitted in effect while testifying in his own behalf that the property was stolen. As to the knowledge that such items were stolen, there was testimony from which the jury could draw the inference that the appellant knew of the stolen character of the property. He told conflicting stories as to how he acquired the same and such indicates a consciousness of guilt. (*People* v. *Hyde,* 51 Cal.2d 152, 156 [331 P.2d 42] ; *People* v. *Lopez,* 126 Cal.App.2d 274, 277-278 [271 P.2d 874].) The appellant's story of the crap game tended to show his guilt. (*People* v. *Peete,* 54 Cal.App. 333, 352 [202 P. 51] ; *People* v. *Spivak,* 166 Cal.App.2d 796, 811 [334 P.2d 44].) Further, even assuming that the appellant did have a crap game with an unknown salesman, his failure to make some inquiry from such unknown salesman about where the merchandise came from was something which the jury could consider in the light of all of the other circumstances. (*People* v. *DeVaughn,* 136 Cal.App. 746, 751 [29 P.2d 914].) Furthermore, the appellant could produce no receipts for any of the dresses in spite of the fact that there were many different brands in his store. The dresses were marked at a price substantially lower than the regular price and the label in at least one dress had been altered. (*People* v. *Malouf,* 135 Cal. App.2d 697, 706 [287 P.2d 834] ; *People* v. *Gould,* 111 Cal. App.2d 1, 7 [243 P.2d 809].)

The appellant argues that the evidence as to knowledge of the character of the property is circumstantial and he cites several cases to the point that the circumstances must, as a matter of law, exclude every other reasonable hypothesis than that of guilt. Such a statement may have some place in a jury instruction but it is not the rule on appeal. (*People* v. *Newland,* 15 Cal.2d 678, 681-682 [104 P.2d 778] ; *People* v. *Burton,* 91 Cal.App.2d 695, 708 [205 P.2d 1065] ; *People* v. *Roberts,* 40 Cal.2d 483, 488 [254 P.2d 501] ; *People* v. *Toledo-Corro,* 174 Cal.App.2d 812, 819 [345 P.2d 529].)

Appellant also contends that the successive counts embraced but a single offense. The thefts alleged in the first three counts occurred as follows: count III on February 5, 1959 ; count II on February 17, 1959, and count I on February 23, 1959. The appellant testified in effect that he received at the same time all three of these items. However, the statement which appellant made to the police indicates that he received

the items on different dates and different occasions. There was other testimony which, if believed by the jury, would create the inference that there was a separate receiving for the items described in each separate count.

The cases cited by appellant, namely *People* v. *Lyons,* 50 Cal.2d 245, 275 [324 P.2d 556]; *People* v. *Smith,* 26 Cal.2d 854, 859 [161 P.2d 941] and *People* v. *Willard,* 92 Cal. 482, 488 [28 P. 585] are not in point for the reason that in each of those cases the prosecution established the fact that the property stolen was received on one occasion. It was the duty of the jury to make the determination and it did so from substantial evidence. (*People* v. *Cullen,* 37 Cal.2d 614, 625 [234 P.2d 1]; *People* v. *Kramer,* 103 Cal.App.2d 35, 37 [229 P.2d 53]; *People* v. *Adams,* 143 Cal. 208, 213 [76 P. 954, 101 Am. St.Rep. 92, 66 L.R.A. 247].) As said in *People* v. *DeVaughn, supra,* 136 Cal.App. 746 at pages 749-750:

". . . But the goods received, as stated in each count, were the property of a different person, and were not necessarily received at the same moment of time, or in the same transaction. There is evidence from which the jury might have inferred that they were not received either at the same time or in the same transaction."

▉ Appellant's next contention has to do with the matter of whether the verdicts in counts I and II are reconcilable with the verdicts as to counts III and IV. The jury, from the evidence, could have acquitted the appellant with reference to the stolen radio and the stolen clock. At least one witness corroborated the story of appellant as to the radio's having been left with him by a friend. As to the clock, the owner thereof did not positively identify the clock in court as the clock which was stolen from his car.

In effect the appellant would have this court review the evidence and accept his story as being the correct story. We are not permitted to pursue such a course even if we were so minded. (*People* v. *Robinson,* 43 Cal.2d 132, 136 [271 P.2d 865].)

▉ As to the admission of the exhibits into evidence, we think the trial judge was correct. The officers had a right to enter the establishment as a public place without a search warrant. (*Thorp* v. *Department of Alcoholic Beverage Control,* 175 Cal.App.2d 489, 492 [346 P.2d 433]; *Cooley* v. *State Board of Funeral Directors & Embalmers,* 141 Cal.App. 2d 293, 298 [296 P.2d 588].)

▉ Merely to observe what is perfectly apparent to any-

one who might be within the store is not a search. (*People* v. *Spicer*, 163 Cal.App.2d 678, 683 [329 P.2d 917]; *People* v. *Ambrose*, 155 Cal.App.2d 513, 522-523 [318 P.2d 181]; *People* v. *Wright*, 153 Cal.App.2d 35, 38-39 [313 P.2d 868]; *People* v. *Sterling*, 154 Cal.App.2d 401, 405-406 [316 P.2d 405]; *People* v. *Brooks*, 154 Cal.App.2d 631, 635 [316 P.2d 435]; *People* v. *Jaurequi*, 142 Cal.App.2d 555, 561 [298 P.2d 896].)

██ We have read the questioned jury instructions and we find no merit to any contention with reference thereto. The court gave CALJIC Number 26 and CALJIC Number 27 and the appellant asserts that thereby the court destroyed the doctrine of reasonable doubt.

The court also gave CALJIC Number 21. CALJIC Number 26 points up that if there are two interpretations of the facts which are reasonable the jury must accept the interpretation which admits of the defendant's innocence. However, it also sets forth that if one interpretation appears unreasonable and the other reasonable, the jury must adhere to the reasonable and reject the unreasonable and further states:

". . . bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt."

The instructions given, under the circumstances, are required by the law. (*People* v. *Merkouris*, 46 Cal.2d 540, 560-562 [297 P.2d 999]; *People* v. *Yokum*, 145 Cal.App.2d 245, 253 [302 P.2d 406]; see also *People* v. *Watson*, 46 Cal.2d 818, 829-830 [299 P.2d 243]; *People* v. *Yrigoyen*, 45 Cal.2d 46, 49-50 [286 P.2d 1]; *People* v. *King*, 103 Cal.App.2d 122, 128 [229 P.2d 20].)

██ As to the last contention with reference to the matter of a fair trial, we are convinced that there is no merit to appellant's assertion. The appellant was fairly tried and found guilty by the jury. He points out that the district attorney, in one of his arguments, made certain statements which are objectionable. The reporter's transcript does not contain the arguments and therefore they are not before us. We cannot consider matters outside the record. (*People* v. *Collins*, 172 Cal.App.2d 295, 302 [342 P.2d 370]; *People* v. *Spencer*, 170 Cal.App.2d 145, 150 [338 P.2d 484]; *People* v. *Justice*, 167 Cal.App.2d 616, 622 [334 P.2d 1031]; *People* v. *McKinney*, 152 Cal.App.2d 332, 335 [313 P.2d 163]; *People* v. *Hernandez*, 150 Cal.App.2d 398, 400 [309 P.2d 969]; *People* v. *Gormley*, 64 Cal.App.2d 336, 338 [148 P.2d 687].)

The judgment (order granting probation) and the order denying the motion for a new trial are and each is affirmed.

Wood, P. J., and Lillie, J., concurred.

A petition for a rehearing was denied August 1, 1960.