[Crim. No. 7507.    Second Dist., Div. One.    July 24, 1961.]

THE PEOPLE, Respondent, v. RICHARD JAMES QUINN, Appellant.

Harry E. Weiss for Appellant.

Stanley Mosk, Attorney General, and S. Clark Moore, Deputy Attorney General, for Respondent.

WOOD, P. J.—Defendant Quinn and Anita Woien were accused of unlawfully possessing heroin. In a nonjury trial Quinn was convicted, and Woien was acquitted. Quinn appeals from the judgment and sentence.

Appellant contends that the court erred in receiving certain evidence (including heroin) in that it was obtained by illegal search and seizure.

Upon stipulation, the People's case in chief was submitted upon the transcript of the preliminary examination. Certain exhibits for identification (Nos. 1, 2, 3, 4, 5), referred to in the preliminary transcript, were offered in evidence at the trial. Those exhibits included 10 capsules of heroin, a rubber finger-stall, spoon, eye dropper, and needle. Defendants objected (at the preliminary examination and the trial) to the offer of said exhibits in evidence on the ground that they were obtained by illegal search and seizure. The objection was overruled. The defendants did not testify at the preliminary examination or the trial, and no testimony was offered on behalf of either of them.

On June 22, 1960, about 2 p. m., Officer Ervin went to an apartment house at 1242 South Menlo Avenue in Los Angeles in response to a radio call regarding a disturbance. When he arrived there he saw a man on the sidewalk in front of the house. The man said he was the manager of the apartment house and that he had made the radio call. The man took a key from his pocket, opened the door of an apartment at that address, and asked the officer to enter. The officer entered the

apartment and sat on a couch. Then the man said: that he had been having trouble with the occupant of the apartment, who was a girl about 20 years of age; that when she rented the place it was understood there would be no other occupant; that on various occasions he had observed hard-looking characters entering and leaving the apartment at all hours of the night; that he believed there was something wrong and that the persons were narcotic addicts. While he was on the couch he observed some capsules and large matches on a desk. The capsules contained a white residue which resembled heroin. The matches were the type used by narcotic addicts in heating a spoon. He did not take anything from the apartment. He gave this information to Officers Brown and Kilgo.

Officer Kilgo testified in substance as follows: On June 22, 1960, he was patrolling in "a plain-clothes vehicle," and about 2 p. m., pursuant to a call he met Officer Ervin at Wilshire and Western Boulevards (about 2 miles from said Menlo address). Officer Ervin informed him that he had been allowed to enter an apartment at 1242 South Menlo. Officers Kilgo (witness) and Brown went to that apartment and knocked on the door. Defendant Woien came to the door. Officer Kilgo displayed his badge and said he was a police officer. Woien stepped back, and the two officers entered the apartment. The witness said that the officers had information that she (Woien) was conducting narcotic activity there. She said she knew nothing about that. At that time defendant Quinn was standing behind her. He had a fixed stare. The witness asked him if he used narcotics. Quinn's speech was very slow and slightly slurred, and his eyes were pinpointed. He was not wearing a shirt. With Quinn's consent, the witness observed Quinn's arm. There were numerous needle marks on his arm, and the marks appeared to be fresh. Then the officer (witness) arrested Quinn. There were numerous needle marks on Woien's arm. He arrested her. Then he commenced a search of the apartment. He found, in an ash tray, six capsules with white powder residue in them. He found, in a dresser drawer, a rubber finger-stall with a white powder substance in it. In the pocket of a shirt (on a table in the living room), he found four capsules which contained a white powder that resembled heroin. He went into the bathroom where he saw Officer Brown pick up (from the floor) a spoon and four capsules, and he saw that officer remove an eye dropper and a hypodermic needle from a drawer. Carbon was on the bottom of the spoon, and "a white gummy remnant"

was in the spoon. The defendants said that they did not know anything about the articles which were found by the officers. Woien said she had been using narcotics about two months. Quinn said he had used narcotics about two years previously, but had not been using them recently.

The articles which were found by the officers were received in evidence as hereinabove stated.

The officers did not have a search warrant or a warrant of arrest.

Appellant argues that the entry into the apartment by the first officer (Officer Ervin) was not for the purpose of investigating a felony, and that since the prosecution did not establish that the manager had authority to give the officer consent to enter the apartment, the entry by the first officer was unlawful. Appellant argues further to the effect that the subsequent entry by the two other officers could not become lawful or independent of the first officer's unlawful entry.

█ The evidence shows that the first officer went to the apartment house in response to a radio call regarding a disturbance, and that the person who met him upon his arrival there was the manager; that the manager opened the door of an apartment, by using a key which was in his possession, and he invited the officer to enter; that after the officer was sitting on a couch therein, the manager proceeded to make his complaint regarding the disturbance or trouble which was the basis for the radio call; that it was during the recital of the complaint that the officer was informed that the apartment they were in was an apartment of someone other than the manager himself; and that while the officer was there, hearing the complaint, he, without making a search, observed some capsules and large matches on a nearby desk. There was no evidence that, before entering the apartment, the officer had any reason to believe that the apartment was not the apartment of the manager. The officer entered upon the invitation of one who had apparent authority to give the invitation. The evidence was sufficient to support a finding that the officer did not enter unlawfully. █ The evidence also shows that he did not make a search therein, but he merely observed that which was in view. Merely to observe that which is in plain view is not a search (*People* v. *Roberts*, 182 Cal.App.2d 431, 437, 438 [6 Cal.Rptr. 161]). The officer was there for the purpose of hearing a complaint of a citizen, and he was not required to ignore evidence of a crime which he observed while hearing the complaint. He did not take anything from the

apartment, but he gave the other officers information as to his observations at the apartment.

When the other officers (in plain clothes) knocked on the door of the apartment, the door was opened by defendant Woien. When one of the officers displayed his badge and said he was a police officer, she opened the door and stepped back. The evidence was sufficient to support a finding that the officers entered with her consent. (See *People* v. *Smyre*, 164 Cal.App.2d 218, 224 [330 P.2d 489] ; *People* v. *Elliott*, 186 Cal.App.2d 178, 182 [8 Cal.Rptr. 795] ; *People* v. *Holland*, 148 Cal.App.2d 933, 936 [307 P.2d 703] ; *People* v. *Neal*, 181 Cal.App.2d 304, 308 [5 Cal.Rptr. 241].) The entry was not unlawful. While the officers were talking to Woien, the defendant Quinn, who was not wearing a shirt, was standing near her. Officer Kilgo observed that Quinn had a fixed stare, his eyes were pinpointed, his speech was slow and slurred, and on his arms there were needle marks which appeared to be fresh marks. Probable cause for an arrest exists if a person of ordinary prudence would be led to believe or conscientiously entertain a strong suspicion of the guilt of the accused. (See *People* v. *Cantley*, 163 Cal.App. 2d 762, 765 [329 P.2d 993] ; *People* v. *Gusukuna*, 152 Cal. App.2d 135, 137 [312 P.2d 714].) Such appearances of appellant, in connection with the other circumstances here, constituted probable cause for arresting him. The arrest of appellant was lawful. The search herein was an incident of a lawful arrest. Such a search is not unlawful. (*People* v. *Winston*, 46 Cal.2d 151, 162 [293 P.2d 40] ; *People* v. *Montano*, 184 Cal.App.2d 199, 205 [7 Cal.Rptr. 307].)

The evidence was sufficient to support the judgment.

An affirmance of the judgment is an affirmance of the sentence.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.