[Crim. No. 8237. Second Dist., Div. Four. Oct. 5, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. AGUSTIN FLORES CHAVEZ et al., Defendants and Appellants.

250

Max Solomon, John J. Bradley and Nathan Axel for Defendants and Appellants.

Stanley Mosk, Attorney General, Doris H. Maier, Assistant Attorney General, and Edsel W. Haws, Deputy Attorney General, for Plaintiff and Respondent.

JEFFERSON, J.—The Los Angeles County Grand Jury returned an indictment against defendants in which they were charged jointly with conspiracy to violate two sections of the Health and Safety Code; section 11500, possession of narcotics, and section 11501, sale of narcotics. The indictment alleged five overt acts to support the charge of conspiracy. The indictment also charged each defendant separately with violation of section 11500 of the Health and Safety Code. Three prior convictions were alleged against defendant Chavez; robbery, transportation of narcotics, and grand theft. Defendant Chavez denied these priors, but later he admitted them out of the presence of the jury. Both defendants made motions to have the indictment set aside under section 995 of the Penal Code. The motions were denied, and defendants entered pleas of not guilty. After a jury trial defendants were found guilty as charged in the indictment. Motions for new trial and probation were denied, and defendants were sentenced to state prison for the term prescribed by law,

sentences to run concurrently as to each count. This is an appeal from the judgments and orders denying motions for new trial.

Sergeant Spellman, a police officer engaged in narcotics investigation, was assigned to watch a certain house, and its occupants, located in the County of Los Angeles. On April 19, 1961, Officer Spellman observed defendant Rodriguez enter the house, remain inside for approximately 20 minutes, and then drive away in an automobile. Officer Spellman followed Rodriguez in an unmarked police car. Rodriguez drove along a circuitous route through various streets, alleys and a parking lot. At one point he stopped in the middle of the block and appeared to be making observations through his rear window. Rodriguez picked up defendant Chavez at a street intersection and proceeded some distance further where he parked the automobile. Defendants talked to each other for approximately 20 minutes in the parked car. Thereafter, Rodriguez drove on further, with Chavez in the car, to an uninhabited area within Los Angeles County. Chavez got out of the car and proceeded into a gully along the side of the road.

At this point Officer Spellman was approximately two hundred yards down the road observing defendants through binoculars. Rodriguez looked down the road and apparently spotted Officer Spellman. He was observed making a motion to Chavez, apparently beckoning to him to return to the car from the gully. Rodriguez then opened the trunk and hood of the automobile, making it appear that they were stopped by the side of the road due to some mechanical trouble. Shortly thereafter, defendants closed the hood and trunk and attempted to drive past Officer Spellman, who pulled his car out into the road and stopped defendants.

Sergeant Spellman and officers with him searched the vehicle and discovered $1,790 cash in the glove compartment. Rodriguez denied any knowledge of the money and Chavez remained silent. Spellman stated that if no one claimed the money it belonged to the police department. At this, Chavez claimed it was money he had saved and placed in the glove compartment before defendants had entered a bar on that date. Officer Spellman also searched the area where Chavez had entered the gully and found a brown paper bag secreted under a tree which contained approximately one-half pound of heroin divided into four individual containers. Officer Spellman said to Chavez "I found your stash." Chavez looked

at the bag of heroin and said nothing. The officer opened the bag and Chavez looked in and shrugged his shoulders. The officer made the following statements to Chavez: "You know, I am going to find your prints on this," and "You put it down there . . ." and "There will be no one's prints on it but yours." Defendant Chavez looked at the officer and stated, "I don't think I had better say anything until I see my attorney." Rodriguez denied knowing anything about the heroin found in the gully. This conversation was admitted into evidence only as to Chavez.

Spellman had another conversation with defendant Chavez on the way to the police station in which the officer accused Chavez of ownership of the heroin. In reply, Chavez said, "I can't say anything," and "I will be hurting my own case." The officer then told Chavez that Chavez' fingerprints would be found on the heroin and that Chavez should know such fact to which Chavez replied: "Look, if you were me, would you say anything?" At the conclusion of this conversation Chavez stated, "I am not going to say anything until I see my lawyer."

After arriving at the police station, Sergeant Spellman had another conversation with Chavez which was admitted into evidence as to him only; the officer stated to him that his prints would be found on the heroin; that he had the "man's $1,800"; and that he should take Rodriguez off the hook. Chavez inquired if any prints had been found at that time and was informed that no prints had been found, but they would be obtained. Defendant Chavez stated to the officer that the officer could not be sure that the prints would be obtained. The officer then asked if Chavez would take Rodriguez "off the hook" if Chavez' prints were found on the heroin. Chavez replied, "Well, if you get my prints off of it, I will take it."

The day following the arrest Rodriguez was taken from the county jail to his home. On the search and seizure issue Rodriguez admitted on cross-examination that the police officers asked him how much heroin he had inside and he replied that it was about one ounce; a police officer asked, "Where is it?"; Rodriguez answered, "Come on, I'll show it to you."; Rodriguez entered the house and the police officers followed; the heroin was secreted in two pairs of socks which were handed to the police officer by Rodriguez.

Rodriguez testified on the search and seizure issue that he was threatened that if he did not cooperate his wife and

children would be taken to jail; that three of the four containers found contained heroin which had been "cut"; that he had purchased one ounce of heroin for $275 and he was going to sell it after dilution for $150 per half ounce; that he had cut the narcotics three times. Officer Hanks testified that these statements were freely and voluntarily made. The police officers denied that any such threat had been made.

Aside from Rodriguez' testimony on the search and seizure issue, which was given outside of the presence of the jury, neither defendant took the stand on the issue of guilt.

██ Both defendants contend that their motions under section 995 of the Penal Code were erroneously denied by the trial court. The motions were grounded on the contention that the evidence presented to the grand jury was not sufficient to support a charge of conspiracy to sell narcotics. The transcript of the proceedings before the grand jury, however, was not brought up on appeal and error cannot be assumed in its absence. (*People* v. *Scott*, 24 Cal.2d 774, 777 [151 P.2d 517]; *People* v. *Dawson*, 150 Cal.App.2d 119, 125 [310 P.2d 162].)

██ Both defendants also contend that the evidence presented at the trial is insufficient to support their convictions of possession of narcotics and of conspiracy to sell narcotics. There was substantial evidence to support a finding by the jury that defendants were in joint possession of heroin which had been secreted in the gully. The devious route taken by defendants to arrive at the location of the secreted heroin; Rodriguez' furtive observations from the rear window of his automobile; and the evasive action of looking under the hood and in the trunk of the automobile when they became aware of the presence of police officers nearby all evidence a consciousness of guilt. The fact that defendants went directly into the gully where the supply of narcotics was hidden evidences that they had knowledge of and dominion over the narcotics.

██ There was also substantial evidence to support a finding by the jury that defendants conspired to sell narcotics. ██ It is seldom possible for the prosecution to offer direct evidence of an agreement to commit a crime. The agreement to commit the crime is usually made in secrecy. The conspiracy must be inferred by the trier of fact from all the circumstances that are proven, and if the inference is a reasonable one it will not be disturbed on appeal. (*People* v.

*Massey,* 151 Cal.App.2d 623, 652 [312 P.2d 365].) The most natural inference to be drawn from the joint possession of the large amount of high-grade heroin and almost $1,800 cash in the glove compartment was that the parties were engaged in selling heroin and intended to sell the remainder. "It has been held that persons can be prosecuted as conspirators if, by buying, selling, *or doing some other act,* they knowingly participated in a general plan to place narcotics in the hands of ultimate users. [Citations.]" (Emphasis added.) (*People* v. *Van Eyk,* 56 Cal. 2d 471, 479 [364 P.2d 326].) Defendant Rodriguez admitted to the police that he had planned to dilute and sell the one ounce of heroin found in his home, and the jury could logically infer that defendants had agreed to a similar plan whereby at least part of the one-half pound of heroin would be sold to some ultimate user.

Defendant Chavez contends that the admissions made to Officer Spellman after the arrest should not have been admitted into evidence on the ground that no corpus delicti had been established independent of the admissions. "All that is needed to establish the corpus delicti of possessing narcotics in violation of the statute is to show a reasonable probability of unlawful possession by someone. [Citation.]" (*People* v. *Lawton,* 186 Cal.App.2d 834, 836, 837 [9 Cal.Rptr. 122].) The fact that Chavez was observed under the suspicious circumstances shown and in the out-of-the-way place where the heroin was secreted was sufficient to establish the corpus delicti.

 Defendant Chavez also contends that these admissions were erroneously admitted into evidence since they were not free and voluntary and did not establish a consciousness of guilt. Where an accused stands mute in the face of the accusation or responds with an evasive or equivocal reply, the failure to deny is admissible if under the circumstances a reply is called for, and the defendant is free to speak spontaneously. The fact that defendant was under arrest is only one of the circumstances to be considered, and it is not of itself determinative. (*People* v. *Simmons,* 28 Cal. 2d 699 [172 P.2d 18].) A police officer testified that Chavez' statements were freely and voluntarily made. We find nothing in the record to show that the admissions of Chavez and his silence in the face of accusatory statements were the result of fear, menace or coercion. It is noteworthy that at the time of the trial there was no contention that

these admissions were not free and voluntary and no objection was voiced to their being received in evidence upon that ground.

As stated in *People* v. *Yeager*, 194 Cal. 452 [229 P. 40], at 486: "Such accusatory statements are admissible against a defendant whether he be tried alone or jointly, provided that in the latter case they are properly limited to the defendant concerned." This was done in the case before us.

Defendant contends that the so-called admissions were not in fact admissions; that it is obvious that defendant was attempting to exercise his constitutional privilege against self-incrimination and that his responses were not such as could give rise to an inference of acquiescence or of guilty consciousness. We do not agree. We hold there was no error in the receiving of the evidence of admissions. However, even if we were to find that the trial court erred in this respect, in view of the overwhelming evidence of defendant Chavez' guilt exclusive of such admissions, under the provisions of section 4½ of article VI of the California Constitution, the admission of such evidence was not prejudicial so as to justify a reversal. (*People* v. *Simmons, supra,* 28 Cal.2d at p. 721.)

Defendant Rodriguez contends that the question of whether consent was voluntarily given to search his home and seize the illegal narcotics should have been submitted to the jury. There is no merit in this contention. The determination whether a search and seizure were legal or illegal is a question of law for the court. (*People* v. *Gorg,* 45 Cal.2d 776 [291 P.2d 469].)

Defendant Rodriguez also contends that the search and seizure was illegal as a matter of law. There was conflicting testimony as to whether the consent to enter the home and seize the heroin was freely given, and the fact that defendant was under arrest when the consent was given is only one of the circumstances to be considered. (*People* v. *Robinson,* 149 Cal.App.2d 282 [308 P.2d 461].) The trial court's determination on the issue of the legality of a search and seizure is binding upon an appellate court when supported by substantial evidence. (*People* v. *Zavaleta,* 182 Cal.App.2d 422 [6 Cal.Rptr. 166].) The police officer's testimony that defendant Rodriguez freely consented to the search and seizure provided substantial evidence to support the trial court's finding.

The judgments and orders denying motions for new trial are affirmed.

Burke, P. J., and Ford, J.,* concurred.

Appellants' petition for a hearing by the Supreme Court was denied November 28, 1962. Peters, J., was of the opinion that the petition should be granted.

*Assigned by Chairman of Judicial Council.