220 Cal.App.2d 108 (1963)
THE PEOPLE, Plaintiff and Respondent,
v.
CONNIE ALLEN WILLIAMS, Defendant and Appellant.
Crim. No. 8474. 
California Court of Appeals. Second Dist., Div. One. 
Sept. 12, 1963.
 James R. Montgomery, under appointment by the District Court of Appeal, for Defendant and Appellant.
 Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, C. A. Collins and David Rothman, Deputy Attorneys General, for Plaintiff and Respondent.
 LILLIE, J.
 Defendant admitted three prior felony convictions, including narcotics violations in 1951 and 1955, and was found guilty of possession of heroin by the court sitting without a jury. He appeals from the judgment of conviction and order denying motion for new trial. The purported appeal from the order is dismissed. (Pen. Code, 1237.)
 [1a] In the early morning of March 23, 1962, Officers Gibson and Fowler were on patrol in an unmarked police car; at approximately 1:50 a.m they saw defendant walking alone on the public sidewalk in, what appeared to them by his manner and appearance to be, a "stuporous condition" and under the "influence of something." Gibson recognized him as a person whom he had previously arrested in August 1961 and knew to be a narcotics user. The officers pulled over to the curb "to talk to him about his physical condition." As they got out of the vehicle and approached defendant, Gibson identified himself as a police officer and Fowler said to defendant: "Police Officer I want to talk to you"; but before they could say more defendant, who appeared to be startled, turned to the right, made a half turn to the left, moved both arms up toward his chest area, turned again to the right, dropped a small dark-colored object from his left hand to the sidewalk, and ran east. The officers in pursuit apprehended him about 15 feet away; they handcuffed him and returned him to where he had dropped the object. The officers picked it up; it consisted of four balloons containing heroin in a cellophane wrapper. After his arrest and in the police car on the way to the station defendant told Gibson that the reason he ran was because he knew him, he (Gibson) having booked him before, and knew he would go to jail if he arrested him again; and that he was "shooting about one cap" a day and some of the marks on his arm were fresh and some were old. Gibson examined his inner left arm and *111 saw scar tissue and a number of marks, some fresh with blood scabs, some old.
 Defendant testified that it had been 13 months since he had been administered narcotics and had been taking Nalline tests about five times a month, the last in March 1962; that he had walked normally, taken no alcohol or narcotics and had none in his possession that night, and never saw the 4 balloons and heroin prior to trial; that when he noticed Gibson he started to run because in February Gibson told him "something about 'You are going to go back into jail ... you start fooling around I get you,' " and because of the treatment he received in a prior arrest in August 1961; that Gibson said "Where you going," and as he tried to pull away Fowler put handcuffs on him; that he neither dropped anything nor saw the officers pick up anything and they showed him nothing; and that the first mention of narcotics was in the car. He denied saying he was taking a cap a day and there were needle marks on his arm.
 Appellant appeared first in propria persona filing both opening and closing briefs in which he argued numerous points all of which we have carefully examined and found to be without substance. Counsel subsequently appointed filed a supplemental opening brief raising a single issue -- that if defendant discarded the narcotics as a direct result of an attempted illegal invasion of his constitutional rights, the evidence was illegally obtained and inadmissible, and that defendant's constitutional rights were violated because the officers had no right to arrest or search defendant "at the time immediately prior to the time the narcotics were being discarded by him and his attempt to flee." (S.O.B., p. 3.) To bring the case within the principle of Gascon v. Superior Court, 169 Cal.App.2d 356 [337 P.2d 201], and related cases, he has indulged in an extensive factual argument which has no place in a reviewing court. [2a] The evidence viewed in a light most favorable to the judgment of conviction (People v. Newland, 15 Cal.2d 678 [104 P.2d 778]; People v. Daugherty, 40 Cal.2d 876 [256 P.2d 911]) supports the implied finding that defendant was arrested, not prior to but, after the officers sought to question him and after he dropped the narcotics and fled; and that it was in flight that he was apprehended and arrested. If any search was made it was after a lawful arrest.
 It is clear from the record that when the officers pulled their vehicle over to the curb and walked up to defendant *112 they neither intended to arrest him nor did so, but wanted "to talk to him about his physical condition"; in fact, when Fowler approached him he said, "I want to talk to you."
 Immediately prior, the officers had observed one they knew to be a narcotics user walking alone on a public street at 1:50 in the morning in what appeared to them to be in a "stuporous condition," under the "influence of something." The circumstances gave them reasonable cause to get out of their vehicle and investigate; and defendant's subsequent conduct, act of discarding the narcotic and sudden flight, and the inference that could reasonably be drawn therefrom that he was guilty of some crime, leave no doubt not only as to the reasonableness of but to the necessity for an investigation. (People v. Martin, 46 Cal.2d 106 [293 P.2d 52].) The evidence does not warrant any contention that the approach of the officers constituted a restraint upon defendant prior to his furtive action and flight, nor that their approach was for any purpose other than questioning. (People v. Poole, 174 Cal.App.2d 57 [344 P.2d 30].) [3] "It has been held that an officer may question people who are outdoors at night (People v. Simon, 45 Cal.2d 645, 650 [290 P.2d 531]), and it is not unreasonable for officers to seek interviews with suspects, and if in such inquiries the accused voluntarily reveals evidence against him, he may not later assert that he acted only in response to an implied assertion of unlawful authority. (People v. Michael, 45 Cal.2d 751 [290 P.2d 852].)" (People v. Jaurequi, 142 Cal.App.2d 555, 560 [298 P.2d 896]; People v. Clifton, 169 Cal.App.2d 617 [337 P.2d 871].) [4] The fact that the officers stopped to investigate and talk to the defendant does not constitute an arrest. (People v. Sanchez, 189 Cal.App.2d 720 [11 Cal.Rptr. 407]; People v. King, 175 Cal.App.2d 386 [346 P.2d 235]; People v. Ambrose, 199 Cal.App.2d 846 [19 Cal.Rptr. 102].)
 [2b] Appellant argues that because of Gibson's "threat" to "get him" in February, there was an implied threat to unlawfully search him when the officers approached him, and that his "attempted disposition of the narcotics was a direct result of this threat to violate his constitutional rights." (A.O.B., p. 9.) Gibson denied that he ever threatened defendant or said he "would get him, yet"; and the trial court, as it had a right to do, gave credence to this denial. (People v. Nunley, 194 Cal.App.2d 233 [14 Cal.Rptr. 874]; People v. Casado, 181 Cal.App.2d 4 [4 Cal.Rptr. 851]; People v. Ambrose, 199 Cal.App.2d 846 [19 Cal.Rptr. 102].) Thus, we have here no *113 situation in which defendant attempted to dispose of the contraband because of "any unlawful assertion of authority by the officers" (People v. Robles, 183 Cal.App.2d 212, 215 [6 Cal.Rptr. 748]) or "threat" to violate his constitutional rights. The officers neither intended to search or arrest defendant nor made any effort to do so when they approached him, and the record repeatedly bears this out; the officers did nothing they were not lawfully entitled to do. Their conduct in no way approaches that condemned in Gascon v. Superior Court, 169 Cal.App.2d 356 [337 P.2d 201], and Badillo v. Superior Court, 46 Cal.2d 269 [294 P.2d 23]. In Badillo, supra, the officers illegally entered the premises; as Badillo fled out the front door he threw out some contraband which landed in the hands of the officer outside. In Gascon, supra, defendant was lawfully on a public street at night and had committed no act which would tend to arouse suspicion; the officers stopped him and told him they were going to search him, after which he fled and threw away the contraband.
 The officers denied they approached defendant for any purpose but to "talk to him about his physical condition," and their actions upon leaving the police car support this; but before they could question him, his conduct made it impossible for them to continue their investigation. Obviously startled, defendant turned from side to side in apparent confusion, moved his hands and arms around his chest area, discarded an object and ran. Viewed in the light of the officer's knowledge that defendant was a narcotics user, their observations of his suspicious appearance and manner of walking, apparent confusion and furtive conduct upon learning they were officers, and attempt to discard the contraband, and defendant's flight, they had reasonable cause to believe that defendant's possession of the object he discarded prompted his flight and that it contained contraband. (People v. Martin, 46 Cal.2d 106 [293 P.2d 52].) The circumstances provided the officers with sufficient basis to support a reasonable belief that defendant was then in the act of committing an offense (People v. Robles, 183 Cal.App.2d 212 [6 Cal.Rptr. 748]; People v. Garcia, 171 Cal.App.2d 757 [341 P.2d 351]; People v. Tisby, 180 Cal.App.2d 574 [5 Cal.Rptr. 614]); thus they pursued, caught and arrested him. [5] "Probable cause is shown if a man of ordinary caution or prudence would be led to believe or conscientiously entertain a strong suspicion of the guilt of the *114 accused." (Bompensiero v. Superior Court, 44 Cal.2d 178, 183 [281 P.2d 250]; People v. Fischer, 49 Cal.2d 442 [317 P.2d 967]; People v. Ingle, 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577]; People v. Kilvington, 104 Cal. 86 [37 P. 799, 43 Am.St.Rep. 73].)
 [6] Up to the point of arrest no search was made. Exhibit 1 was not the result of a search either before or after defendant's arrest; he voluntarily dropped the heroin from his person when he saw the officers approach, obviously to rid himself of the contraband in the event he was searched. The object landed in the public street, and from there was picked up by the officers. (People v. Spicer, 163 Cal.App.2d 678 [329 P.2d 917]; People v. Edwards, 142 Cal.App.2d 419 [298 P.2d 664].) They observed and picked up that which was in plain view and which defendant had voluntarily dropped; this did not constitute a search. (People v. Jaurequi, 142 Cal.App.2d 555 [298 P.2d 896]; People v. Roberts, 182 Cal.App.2d 431 [6 Cal.Rptr. 161]; People v. Quinn, 194 Cal.App.2d 172 [14 Cal.Rptr. 814]; People v. Russell, 196 Cal.App.2d 58 [16 Cal.Rptr. 228]; People v. Linden, 185 Cal.App.2d 752 [8 Cal.Rptr. 640]; People v. Ambrose, 199 Cal.App.2d 846 [19 Cal.Rptr. 102].) [7] As to the needle marks, they were discovered in the police car after defendant's arrest; if the disclosure of these marks was the result of any search it is clear that it was made incidental to lawful arrest. (People v. Winston, 46 Cal.2d 151 [293 P.2d 40]; People v. Montano, 184 Cal.App.2d 199 [7 Cal.Rptr. 307]; People v. Quinn, 194 Cal.App.2d 172 [14 Cal.Rptr. 814].)
 [8] The remaining points advanced by appellant are without merit. There was no error in permitting Officer Gibson to refer to his previous arrest of defendant. He testified that defendant appeared to be in a "stuporous condition" and "after closer observation ... observed him to be a person ... (he) had previously arrested" for "grand theft auto," at which time he learned defendant was a narcotic user. This was properly admitted on the issue of reasonable cause; in any event it seems unlikely any prejudice could have resulted, for defense counsel fully explored the previous arrest and brought out on Gibson's cross-examination that defendant was tried on the charge and found not guilty. Moreover, before trial, as well as upon cross-examination, defendant admitted three prior felony convictions, two of which related to narcotics. (People v. Chapman, 81 Cal.App.2d 857 [185 P.2d 424].) [9, 10] Appellant also asserts, without argument or reference *115 to the record, certain alleged misconduct of Gibson and the judge during the trial. While under these circumstances we are not required to search the record for claimed error (People v. Denne, 141 Cal.App.2d 499 [297 P.2d 451]; People v. Goldberg, 152 Cal.App.2d 562 [314 P.2d 151]; People v. Craib, 79 Cal.App. 366 [249 P. 543]), we have examined it and find nothing of the conduct alleged by appellant; further, if during the trial he felt there was misconduct, he made no objection thereto and can raise none now.
 [1b, 11] At the outset of the trial, after Gibson identified Exhibit 1, in order to dispense with the time, effort and expense of obtaining an expert, counsel stipulated "that the white powdery substance in Exhibit 1 was in fact heroin." Defendant now seeks to be relieved of the stipulation because he did not personally join therein. The record shows he was present when the stipulation was made but remained silent; he voiced no objection then or at any other time in the trial court. Counsel, on behalf of the defendant, had the right to make such a stipulation (People v. Hanna, 36 Cal.App.2d 333 [97 P.2d 847]); moreover, by his conduct in the trial court defendant is bound by it. (People v. Wilson, 78 Cal.App.2d 108 [177 P.2d 567].) Absent is any showing of prejudice--defendant has never claimed that the substance of Exhibit 1 was not heroin; his defense was and is that Exhibit I was never in his possession, was never dropped from his person, and was never seen by him until the trial. Appellant neither asserts that the stipulation was not in accord with the fact nor claims any advantage would have resulted to him had an expert testified.
 [12] The trial court properly included defendant's prior felony convictions in the judgment although it made no mention of the priors at the time of judgment. Before trial defendant admitted three prior felony convictions; thus, it was unnecessary when the court found defendant guilty of the main offense to relate his admission. Even where a defendant is tried on the issue of priors it is not necessary to specifically find thereon, for a general verdict of guilty as charged in the information covers all issues raised by it including the issue of prior convictions. (People v. Brooks, 65 Cal. 295 [4 P. 7]; People v. Romo, 200 Cal.App.2d 83 [19 Cal.Rptr. 179].) [1c] Finally, contrary to his claim that there is no proof that the heroin (Ex. 1) was ever under his dominion or control, there is more than sufficient evidence to support the implied finding that defendant had the narcotics on his person and discarded *116 the same. (People v. Physioc, 86 Cal.App.2d 650 [195 P.2d 23]; People v. Small, 159 Cal.App.2d 582 [324 P.2d 10]; People v. Young, 197 Cal.App.2d 129 [17 Cal.Rptr. 283].)
 For the foregoing reasons the judgment is affirmed.
 Wood, P. J., and Fourt, J., concurred.