[Crim. No. 10143.   Second Dist., Div. Two.   Aug. 19, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES EVANS
SHERIDAN, Defendant and Appellant.

James Evans Sheridan, in pro. per., and James S. Fitz-patrick, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and George J. Roth, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J.—In a nonjury trial Sheridan was convicted of unlawful possession of heroin (Health & Saf. Code, § 11500). A prior conviction for the same offense was charged but no finding made in support of this charge.

At 3:30 in the afternoon Sergeants Walker and Flynn of the narcotics division of the Los Angeles Police Department drove past Sheridan and one Jay Hill, both known narcotic users, seated in a parked car at a street intersection. Hill, the driver, recognized the officers, reversed his car, and drove off in the opposite direction at a high rate of speed. The two officers gave chase, and as they caught up with the auto Sergeant Walker saw Sheridan turn and extend his arm to a little girl in the back seat, his daughter.

The officers asked Hill why he was fleeing, and Hill replied he didn't want to be shaken down by the police. The officers obtained permission to search Hill and Sheridan and the vehicle. While searching, Sergeant Walker noticed a red balloon fragment sticking out of the inner side of the girl's right sock (a white bobby sock). When he reached down and removed the balloon from the girl's sock, Sheridan said, "That's mine, I gave it to her just before you, just as we saw you coming and told her to put it in her sock." Inside the balloon fragment were three smaller balloons containing in all 1.5 grams of heroin.

At the Police Administration Building about 5 p.m. Sheridan told Sergeants Walker and Flynn that he had bought a spoonful of heroin a few days before the arrest, he had used all but three balloons, and was going to sell the three to get his money back.

Sheridan contends that the heroin was obtained as a result of an illegal search and seizure, and also that he was not advised of his right to counsel and to remain silent, as outlined in *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

(1) *Search and Seizure*

█ It is not unreasonable for officers to seek interviews with suspects or call on them for such purposes. (*People* v. *Martin,* 45 Cal.2d 755 [290 P.2d 855] ; *People* v. *Shelton,* 60 Cal.2d 740, 747 [36 Cal.Rptr. 433, 388 P.2d 665].) █ Sheridan was a known user of narcotics in the company of another known user, he had tried to avoid the police, and had made furtive gestures toward the back seat. (See *People* v. *Blodgett,* 46 Cal.2d 144 [293 P.2d 57].) Under such circumstances it was proper for the officers to investigate and question the suspects. █ As part of this investigation the officers sought permission to search the suspects, and, according to the testimony of Sergeant Walker, permission was voluntarily granted. On cross-examination Sheridan conceded: ''I don't remember whether he got permission to search the car or not. I know he had permission to search me and Mr. Hill. . . .'' Since the testimony of a searching officer provides substantial evidence to support a finding of consent (*People* v. *Sullivan,* 214 Cal.App.2d 404, 409 [29 Cal.Rptr. 515] ; *People* v. *Chavez,* 208 Cal.App.2d 248, 255 [24 Cal. Rptr. 895]), we conclude that the search of defendant was lawful. (*People* v. *Michael,* 45 Cal.2d 751 [290 P.2d 852].)

In the process of searching defendant and Hill the officers observed the balloon in plain sight sticking out of the daughter's sock. █ As said in *People* v. *Spicer,* 163 Cal. App.2d 678, 683 [329 P.2d 917], ''While it has been said that ordinarily searching is a function of sight, it is generally held that the mere looking at that which is open to view is not a 'search'. . . .'' (*People* v. *Quinn,* 194 Cal.App.2d 172, 175 [14 Cal.Rptr. 814] ; *People* v. *Terry,* 62 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381].) █ On seeing the balloon in the daughter's sock, the officers had reasonable and probable cause to believe a felony was being committed. (*People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d

577].) At that time the officers knew or could infer the following: (1) Hill and Sheridan were narcotics users (cf. *People* v. *Taylor,* 176 Cal.App.2d 46, 51 [1 Cal.Rptr. 86], past character of suspect is a factor in determining probable cause); (2) Hill had driven off at high speed to avoid confrontation; (3) Sheridan had made furtive gestures in the direction of the back seat (*People* v. *Blodgett, supra*); (4) heroin is commonly packaged in balloons. (See *People* v. *Rodriquez,* 222 Cal.App.2d 502 [25 Cal.Rptr. 435]; *People* v. *Harris,* 62 Cal.2d 681, 683 [43 Cal.Rptr. 833, 401 P.2d 225].) Since probable cause to believe a felony is being committed is sufficient grounds for an arrest and a search incident thereto (*People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577]), we conclude the heroin was obtained by means of a valid search and seizure.

(2) *Right to Counsel and Right to Remain Silent*

*People* v. *Dorado,* 62 Cal.2d 338, at page 354 [42 Cal.Rptr. 169, 398 P.2d 361] held that "when the investigatory stage has become an accusatory one, that is, when it has begun to focus on a particular suspect, the suspect has been taken into police custody, and the police have carried out a process of interrogations that lends itself to eliciting incriminating statements" then the suspect must be advised of his right to counsel and of his right to remain silent.

In the present case the specific crime for which defendant was charged and convicted was unlawful possession of narcotics, and proof of that crime was complete at the time of his arrest, not only by discovery of the narcotic itself but by defendant's admission of ownership—which amounted to a complete confession of every element of the crime. Approximately an hour and a half after his arrest defendant was questioned at the police station, undoubtedly as part of a further investigation to trace the narcotics to their origin. The objective purpose of the police in interrogating defendant at the station appears to have been a commendable desire to follow up their completed case against defendant by uncovering, if possible, his source of supply. At that time defendant's crime, possession of narcotics, had been solved, and no further interrogation, investigatorial or accusatorial, was required to prove that crime. However, any statements by defendant as to how and where he got the narcotics would necessarily produce a further acknowledgment of his unlawful possession of narcotics, which would in substance amount to a second confession. We assume the use in evi-

dence of the second confession obtained without advising defendant of his right to counsel was improper. (*People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361]; *People* v. *Stewart,* 62 Cal.2d 571, 580 [43 Cal.Rptr. 201, 400 P.2d 97].)

■ Ordinarily, improper admission in evidence of a confession automatically requires reversal of a conviction because its effect is presumed to be prejudicial. However, such a result does not logically follow when a later confession merely duplicates a lawfully-obtained earlier confession covering all elements of the crime with which defendant has been charged in a case in which other evidence is ample to support a conviction apart from any confession. (*People* v. *Ford,* 234 Cal.App.2d 480, 494-496 [44 Cal.Rptr. 556]; *People* v. *Parham,* 60 Cal.2d 378, 385 [33 Cal.Rptr. 497, 384 P.2d 1001]; *People* v. *Garner,* 57 Cal.2d 135, 144 [18 Cal. Rptr. 40, 367 P.2d 680]; *People* v. *Moya,* 53 Cal.2d 819, 822 [3 Cal.Rptr. 360, 350 P.2d 112]; *People* v. *Atchley,* 53 Cal.2d 160, 170-171 [346 P.2d 764]; *United States* v. *Bayer,* 331 U.S. 532, 540 [67 S.Ct. 1394, 91 L.Ed. 1654].) ■ Under some circumstances a second illegal confession following a legal confession may require a reversal, but where, as here, the later statements were substantially identical in incriminating effect with the earlier statements and where the evidence was heard by an experienced judge rather than by a jury, we conclude the error in the admission of evidence did not result in a miscarriage of justice, and that a different result on retrial is not probable. (Cal. Const., art. VI, § 4½; *People* v. *Watson,* 46 Cal.2d 818, 834-837 [299 P.2d 243]; *People* v. *Modesto,* 62 Cal.2d 436, 460-464 [42 Cal.Rptr. 417, 398 P.2d 753], Peters, J., concurring and dissenting.)

The judgment is affirmed.

Herndon, J., concurred.

ROTH, P. J.—I dissent.

I dissent solely because I believe *Dorado* requires reversal.

Concurrently with his arrest, appellant spontaneously confessed the crime. As the majority recite, when the balloon was removed from the little girl's sock, appellant stated: "That's mine, I gave it to her just before you, just as we saw you coming and told her to put it in her sock."

The investigatory period had therefore passed and the accusatory stage had begun.

One and one-half hours after the arrest and the confession above recited, appellant was again interrogated at the police station. He was not advised of his right to counsel or his right to remain silent and there was no waiver, effective or otherwise, of either. On this occasion, pursuant to interrogation, appellant stated ". . . that he had bought a spoon of heroin a few days before the arrest. That he has used all but the three balloons. That he was going to sell the three balloons and get his money back."

This second confession, in my opinion previously expressed in *People* v. *Ford,* 234 Cal.App.2d 480 [44 Cal.Rptr. 556], was clearly within *Dorado,* and should not have been introduced in evidence. Whether or not the second confession had any effect on the court (the case was tried without a jury) as I understand *Dorado,* is immaterial. I would therefore reverse the judgment.

Appellant's petition for a hearing by the Supreme Court was denied October 13, 1965.