[Crim. No. 8844. Second Dist., Div. Two. Dec. 7, 1965.]

THE PEOPLE, Plaintiff and Respondent, v. FRANK
MAGDELENA, Defendant and Appellant.

Sheldon Rosenfield, under appointment by the District Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Charles R. Kocher, Deputy Attorney General, for Plaintiff and Respondent.

FLEMING, J.—Appeal from a conviction for possession of narcotics (Health & Saf. Code, § 11500).

Magdelena complains that (1) evidence against him was obtained by an unlawful search, and (2) his confession was improperly received in evidence.

Magdelena's search resulted from his arrest under the following circumstances. For a month prior to the arrest sheriff's deputies assigned to the narcotic detail had intermittently kept watch over a vacant, boarded-up house belonging to Magdelena's mother. On several occasions known narcotic users were seen going in and out of the house. The day before the arrest several persons entered and left, among them Ortiz, a known heroin addict. On the following day Deputies Weldon and Maloney saw Ortiz and another enter the house and later saw Ortiz leave by the rear door. The deputies started for the rear door and as they approached the

door heard conversation coming from inside the house. They stood quietly at the doorstep and overheard a voice ask the question, ''How much are you holding?'', and receive the answer, ''Two grams.'' In the jargon of narcotic addicts the term ''holding'' means current possession of narcotics. Deputy Maloney then went to the front door and shouted, ''Sheriff's Department. Open up.'' Hearing the sound of scurrying footsteps, he broke into the house and found three persons inside, one of them Magdelena. The latter dived head-first through a window, but after a short chase was caught and arrested by Deputy Weldon. Magdelena was searched and heroin capsules found on his person. He was sweating badly and appeared dazed and groggy. The two other suspects were also arrested. The sheriff's deputies had no warrant to make a search or an arrest.

1) *Evidence Was Secured by a Search Incident to an Arrest on Reasonable Cause*

A police officer may make an arrest without a warrant whenever he has reasonable cause to believe that the person to be arrested has committed a felony. (Pen. Code, § 836.) Reasonable cause comprises a state of facts which induces a man of ordinary prudence to conscientiously entertain a strong suspicion that the suspect is guilty of a crime. (*People* v. *Ingle*, 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577].) In the present case continued traffic in and out of a vacant, boarded-up house by known narcotic users, and the conversation overheard by the deputies at the doorstep, together supported a rational belief that the occupants of the house were engaged in the commission of a felony and justified the forcible entry into the house to make an arrest (*People* v. *Maddox*, 46 Cal.2d 301, 306 [294 P.2d 6]), and the search of Magdelena incident to his arrest. (*People* v. *Van Eyk*, 56 Cal.2d 471 [15 Cal.Rptr. 150, 364 P.2d 326]; *People* v. *Fisher*, 184 Cal.App.2d 308 [7 Cal.Rptr. 461].)

Magdelena, however, contends that the initial entry of the deputies onto the premises constituted a trespass and an invasion of his privacy. For want of lawful entry the eavesdropping was illegal, for want of lawful eavesdropping the arrest was illegal, for want of lawful arrest the search was illegal, and, he argues, for want of lawful search the evidence was inadmissible.

 We think the deputies were justified in going upon the premises in order to investigate suspicious activity by

seeking to question the persons who were on the property. When there is reasonable cause to suspect criminal activity the police are entitled to seek out suspects and witnesses for questioning and call on them for that purpose. (*People* v. *Michael,* 45 Cal.2d 751, 754 [290 P.2d 852] ; *People* v. *Martin,* 45 Cal.2d 755, 761 [290 P.2d 855] ; *Hester* v. *United States,* 265 U.S. 57 [44 S.Ct. 445, 68 L.Ed. 898].)　 In the course of seeking interviews with suspects the police can employ their eyes and ears to good advantage to see what is plainly visible and hear what is clearly audible, and they are not required to alert suspects in advance of their presence by whistle or siren, loudspeaker or searchlight. The deputies were privileged to make their initial entry onto the property in the manner in which they did. The subsequent arrest and search were lawful, and the narcotics seized as a result of the search were properly received in evidence.

2) *Police Questioning Was Investigatory and Not Accusatory*

Magdelena, together with his two companions, was arrested about 3 p.m. and questioned at the police station about 30 to 45 minutes after the arrests. He said the heroin belonged to him, that he had purchased it from one whose name he did not give, that he had used some that morning to take a fix about 11 a.m.

Thereafter Magdelena was taken to a hospital for treatment.

　 There is no evidence that prior to his questioning Magdelena was advised of his rights. Hence under the rule of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], we must determine whether the questioning took place during the investigatory stage (in which the suspect needs no warning of his right to counsel and right to remain silent) or during the accusatory stage (in which warning is required).

　 To distinguish between the two stages an objective test is used, which, as described in *People* v. *Stewart,* 62 Cal.2d 571, 579 [43 Cal.Rptr. 201, 400 P.2d 97], includes such factors as ''the length of the interrogation, the place and time of the interrogation, the nature of the questions, the conduct of the police and all other relevant circumstances.''

　 The investigatory stage may encompass some questioning of a suspect under arrest when it appears the principal purpose of the questioning is not to elicit incriminating answers but to serve some compelling emergency

(*People* v. *Modesto,* 62 Cal.2d 436, 446 [42 Cal.Rptr. 417, 398 P.2d 753]), or give the suspect an opportunity to explain suspicious circumstances. (*United States* v. *Konigsberg,* 336 F.2d 844, cert. den. 379 U.S. 933 [85 S.Ct. 334, 13 L.Ed.2d 344], cited in *People* v. *Stewart,* 62 Cal.2d 571, 578-579 [43 Cal.Rptr. 201, 400 P.2d 97].)

In the present case, as in *Konigsberg,* there were multiple arrests of suspects. The questioning of Magdelena appears to us to have served three objectives: (1) to untangle possible innocent victims of circumstance in a raid which had netted three persons by giving each of them an opportunity to explain his part in the affair; (2) to further pursue the investigation by attempting to locate the suspect's source of supply; and (3) to determine whether the suspect needed immediate medical attention, for on Magdelena's arrest the police acquired the direct responsibility for his care.

We are persuaded that the questioning took place during the investigatory stage with these three objectives in view. We reach this conclusion because the questioning took place almost immediately following the arrest, there was no evidence of pressure by the police to secure incriminating answers, there were multiple arrests and multiple suspects, there was good reason to find out whether Magdalena needed medical treatment, and, finally, because further statements from Magdelena were largely superfluous to a prosecution for possession of narcotics found on his person. (*People* v. *Sheridan,* 236 Cal.App.2d 667 [46 Cal.Rptr. 295], hear. den.; *People* v. *Justiniano,* 236 Cal.App.2d 542 [46 Cal.Rptr. 335].) The questioning in this case contrasts, for example, with that recently before this court in *People* v. *Kjar,* 236 Cal.App.2d 785 [46 Cal.Rptr. 440], where we found the questioning violated the rule of *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361], because it reflected police pressure, took place long after the arrest, after the police had secured the full story of the murder from a third party, and at a time when there were no further crimes to unravel.

We hold Magdelena's confession was given in the investigatory rather than the accusatory stage and was properly received in evidence.

The purported appeal from the order denying a motion for a new trial is dismissed.

Judgment affirmed.

Roth, P. J., and Herndon, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 2, 1966. Peters, J., and Tobriner, J., were of the opinion that the petition should be granted.