Filed 5/6/21  P. v. Fernandez CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>CHRISTOPHER FERNANDEZ,<br><br>        Defendant and Appellant. | A160192<br><br>(Napa County<br>Super. Ct. No. 18CR001517) |

Defendant Christopher Fernandez appeals from a judgment after a jury found him guilty of various counts of conspiracy, theft, burglary, vandalism, and identity theft.  He contends that (1) there was insufficient evidence and improper jury instructions on his three separate convictions for conspiracy; (2) there was insufficient evidence to support even one conviction for conspiracy; (3) there was insufficient evidence and improper jury instructions on his conviction for felony grand theft; (4) the trial court abused its discretion in denying his motion for mistrial based on a detective's unsolicited testimony during cross-examination that defendant had refused to consent to a search of his phone; (5) the trial court abused its discretion in allowing the prosecutor to improperly refresh the recollection of a witness; and (6) the sentencing hearing minute order contains a clerical error regarding his misdemeanor petty theft conviction.

1

We agree, and the Attorney General concedes, that there was insufficient evidence to support defendant's three separate conspiracy convictions. We also agree that there was insufficient evidence to establish the $950 threshold for defendant's felony grand theft conviction. Accordingly, we modify the judgment to strike two of defendant's conspiracy convictions and to reduce his felony grand theft conviction to misdemeanor petty theft. We remand for resentencing on the misdemeanor petty theft conviction, and also for sentencing on defendant's two other misdemeanor convictions as the trial court failed to sentence defendant on these convictions. We affirm the judgment in all other respects.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant was charged with three counts of felony conspiracy (Pen. Code, § 182(a)(1)) (counts 1, 4, and 6);[1] two counts of felony grand theft (§ 487(a)) (counts 2–3); one count of felony vandalism (§ 594(b)(1)) (count 5); five counts of felony second degree burglary (§§ 459, 460) (counts 7–11); and one count of misdemeanor identity theft (§ 530.5(c)) (count 12). The information alleged that, on April 6, 2018, defendant and an unknown co-conspirator had driven to the victim business, Paradise Pools, Inc. (Paradise Pools), to preview its property. It further alleged that, on April 7 and April 8, 2018, defendant broke into several Paradise Pool trucks and stole tools and other items.

The People filed an amended information, which contained the same counts but alleged that the second degree burglaries were committed by entering Paradise Pools' commercial vehicles, not its building. During the trial, the People moved to reduce the count of grand theft occurring on April

---

[1] Unless otherwise indicated, all further section references will be to the Penal Code.

8, 2018 (count 3) to a misdemeanor, and to dismiss one of the burglary counts (count 11).

## A. Trial Testimony

The following is a brief summary of some of the trial evidence, which we set out to provide context to the claims raised on appeal.

Neftali Sanchez, a service manager at Paradise Pools, testified that he walked out to the office parking lot on the evening of April 6, 2018, and noticed an older blue pickup truck entering the lot. The truck's headlights were off. He started his own car and then followed the truck to the parking lot entrance, where he wrote down its license plate number. Neftali Sanchez could see that there were two individuals in the truck, and that the passenger was "Caucasian" with a "big build" and a goatee. He was unable, however, to positively identify defendant as the passenger in a subsequent photograph line-up. At trial, Neftali Sanchez testified that defendant "possibly look[ed] familiar" to him.

Randy Willems, the owner of Paradise Pools, testified that he arrived to the office on April 7, 2018 and learned that several trucks had been broken into overnight. Tools, gas cards, and paperwork were missing from the trucks. The surveillance video footage from the parking lot showed two individuals "breaking the windows, and getting into the vehicles." Willems could not identify the faces from the footage, and could not tell whether one of the individuals was defendant.

Willems testified that by the next morning, April 8, 2018, more trucks had been broken into and more tools had been taken. He subsequently discovered that a hole had been cut in the fence of a cemetery adjacent to Paradise Pools' parking lot. This area was out of view from the surveillance cameras.

3

Willems asked his employees to make lists of the tools and other items that were taken from the trucks. No one documented the condition of the tools. Willems testified that some of the tools were barely used, whereas some of the tools had been in use for five or six years.

The office manager Lauren Bishofberger typed up inventories of the missing items provided by these employees, one for each of the six trucks that had been broken into. She went online, to websites like Home Depot and Amazon, to identify the prices of each item. Bishofberger testified that she performed this internet research because she did not have any experience or training in the appraisal of tools. These inventories were received into evidence.

Officer Jarett Haggmark testified regarding the police report of the incident. The report identified four Paradise Pools trucks with items that had been taken on April 7, 2018. Paradise Pools had previously assigned numbers to these trucks: 13, 19, 25, and 26. The inventory for the missing items from truck 13 totaled $1,165.09. The inventory for the missing items from truck 19 totaled $2,106.35. The inventory for the missing items from truck 26 totaled $2,269.44. The inventory for truck 25 listed one tool but did not identify any price. The inventories included tools like drills, screwdrivers, wrenches, tool bags, and extension cords. Officer Haggmark also testified that he ran the license plate number provided by Neftali Sanchez. The truck was registered to defendant at an address in Vacaville.

Marcy Wilkerson owned the house at 124 Dover Way in Vacaville. Wilkerson testified that she permitted defendant to live with her for about a year in 2018, in exchange for doing some work on the house. She testified that there were a number of tools in the garage, but most of them were not hers.

4

Detective Garrett Wade testified that he conducted surveillance at 124 Dover Way and found that the truck registered to defendant was routinely parked in the driveway. He also observed the truck being driven by defendant. A search warrant for 124 Dover Way was obtained and executed while neither Wilkerson nor defendant was at the property.

Detective Wade testified that multiple tools were located in the garage, along with a Paradise Pools truck registration card. He testified that the garage looked like "a homeowner's Home Depot." The truck registered to defendant was also searched. It contained a Paradise Pools gas card, defendant's work I.D. card, a ski or Halloween mask, two-way radios with a headset, binoculars, a scanner, a box of latex gloves, an air jack, and a reciprocating saw.

### B.    Hugo Sanchez Testimony and Objection

Hugo Sanchez, an assistant manager at Paradise Pools, testified that both tools and an iPad were taken from truck 26. Upon realizing that the iPad was missing, an application was used to search for the device and it "pinged" at a location in the city of Suisun. When asked on direct examination if he remembered a street, he responded: "If I'm not mistaken, it's -- I want to say it's Grove." The prosecutor then stated that she would show Hugo Sanchez a document to refresh his recollection. Defense counsel objected that "[h]e didn't really say he didn't remember" the location. The trial court asked the prosecutor: "Are you asking about the exact location?" The prosecutor responded: "Yes." The trial court overruled the objection, as Hugo Sanchez "couldn't provide the exact, except [*sic*] the street." Hugo Sanchez then reviewed the document, and testified that the application pinged on 119 Dover Way in the city of Vacaville.

Ramon Espinosa, a construction manager at Paradise Pools, then testified that his phone was used to ping the missing iPad and that he took a screenshot of the location. It was located on Dover in Vacaville.

Outside the presence of the jury, defense counsel argued that the refreshing of Hugo Sanchez's recollection was improper. The trial court responded: "I think we need to be careful when we are refreshing recollection." It continued: "We started slipping and sliding with some of the other witnesses and we corrected ourselves, but I don't have a copy of the police report in front of me, so when Hugo Sanchez was testifying, I thought he was simply being asked to provide numerical address for the Grove Street address. I didn't realize he was going to be presented with a document which then led him to testify oh, it's not even Grove Street, it's Dover Street. And it's not even the say [*sic*] same city testified to, it's Vacaville." The trial court, however, found that the issue was "not particularly prejudicial to the defense," as another witness then testified "that his phone was used to assist with the pinging location of the iPad, and he provided the address that was ultimately testified to by Hugo Sanchez."

## C.     Detective Wade Testimony and Motion for Mistrial

On direct examination, Detective Wade testified that he had obtained a search warrant for defendant's cell phone. He testified that cell phones can be helpful in a burglary case because perpetrators will use it to "set up" the theft and take photographs of the stolen items to sell them. He testified that he was unable to access defendant's cell phone because it was locked by a passcode.

On cross-examination, Detective Wade testified that a cell phone can contain G.P.S. location data that can exonerate or prove the guilt of an individual. Defense counsel asked if there was information from a cell phone

6

that could be retrieved from the phone carrier without accessing the device itself. Detective Wade responded that he did not know the carrier of defendant's phone or the phone number. Defense counsel then asked if 911 can be dialed from a phone even if it is locked. Detective Wade responded: "I guess I'll do that next time too." Defense counsel retorted: "Okay. Next time." With no question pending, Detective Wade then stated: "But your client could have given the passcode like I asked."

Defense counsel objected and moved to strike the statement. The trial court struck the answer and stated: "At this point I'm going to ask the jury to disregard the response, please." The trial court excused the jury for a recess. During the colloquy with counsel, it was revealed that, during the trial, the prosecutor had asked defense counsel if defendant would consent to a search of his phone.

Defense counsel promptly moved for a mistrial. He argued that Detective Wade's statement violated defendant's constitutional rights, and requested that the trial court provide the following additional curative instruction: "You heard testimony yesterday that Detective Wade asked Mr. Fernandez for the passcode to his phone. That testimony was not truthful. Mr. Fernandez was never asked for his passcode. You are further instructed to disregard that testimony and not consider it for any purpose."

The motion for mistrial was denied. The trial court framed the question as a "right against self-incrimination issue." It explained: "The problem I have with this case is certainly if [the prosecutor] had opened the door with the officer in I [*sic*] her line of questioning it would be to me a clear violation of Doyle and Griffin. What we have here is we have defense counsel asking questions about a cell phone where he clearly knew the People were getting ready to either break into the phone by way of new technology and

7

requesting a search warrant." It continued: "I do think that as a defense attorney, as I stated before, you want to be a zealous advocate, but you also have to know when you're walking onto a minefield, and he was calling into question the officer's capability as a detective, whether or not he did a thorough investigation, giving him examples of how he could obtain information related to the phone so that he could actually gain electronic evidence from the phone, including calling 9-1-1 to be able to identify the telephone number[.]"

The trial court concluded that "either the defense invited error, or there is no error at all," given that the trial court admonished the jury not to consider the statement and the People "did nothing to elicit the information." The trial court declined the additional curative instruction requested by defense counsel, stating that "it's only going to make matters worse" and noting the trial court was "not prepared to say that we had an officer here who lied, because I don't think that's what happened."

## D.   Jury Instructions and Closing Arguments

At the conclusion of the evidence, the jury instructions included the standard CALCRIM No. 104 instruction, stating in relevant part: "If I order testimony stricken from the record, you must disregard it and must not consider that testimony for any purpose." The same instruction was also provided to the jury before the presentation of evidence.

The jury instructions also included an instruction based on CALCRIM No. 108 for grand and petty theft. It stated that "[t]he defendant committed grand theft if the value of the property is more than $950" and that "[t]he value of the property is the fair market value of the property." It defined "fair market value" as "the highest price the property would reasonably have

8

been sold for in the open market at the time of and in the general location of the theft."

During closing arguments, the prosecutor argued that for felony grand theft on count 2, the amount of the stolen items totaled $5,540. She argued: "If you discount that by 80 percent, remember, you heard that these tools were anywhere from practically brand new, used maybe once, or twice, to five or six years old. If you take all of them and discount them 80 percent, that's still over the 950." She continued: "So I think the evidence has shown sufficiently that those tools stolen on April 7th in Count 2 are worth well above the $950 threshold for the felony charge."

### E. Verdict and Sentencing

The jury found defendant guilty of three counts of felony conspiracy (counts 1, 4, and 6); felony grand theft (count 2); misdemeanor petty theft (count 3); felony vandalism (count 5); two counts of felony second degree burglary (counts 7 and 9); and one count of misdemeanor identity theft (count 12).

Defendant was sentenced to the aggravated term of three years on count 7 (second degree burglary) pursuant to section 1170, subdivision (h)(5)(b). The trial court stated: "as to counts Three and Twelve I'm simply going to deny probation. Those are the two misdemeanor charges." It continued: "As to the remaining counts where we had convictions the court will impose the low term of 16 months but will stay pursuant to Penal Code section 654." The trial court ordered defendant to serve one year in local custody and two years on mandatory supervision.

Defendant timely appealed.

DISCUSSION

Defendant raises six primary arguments in this appeal. First, he argues that there was insufficient evidence to support his three separate convictions for conspiracy, and that the jury instructions allowed the jury to convict him without proof beyond a reasonable doubt of all the elements of each conspiracy. Second, he argues that there was insufficient evidence to support *any* conviction for conspiracy. Third, he argues that there was insufficient evidence to support his conviction for felony grand theft, and that the jury instructions allowed the jury to convict him without proof beyond a reasonable doubt that the value of the stolen property exceeded $950. Fourth, he argues that the trial court abused its discretion in denying his motion for mistrial based on Detective Wade's statement that defendant had refused to provide his phone passcode. Fifth, he argues that the trial court abused its discretion in allowing the prosecutor to improperly refresh the recollection of Hugo Sanchez. Sixth, he argues that there is a clerical error in the sentencing hearing minute order regarding his misdemeanor petty theft conviction that should be corrected.

## I.    SUFFICIENCY OF EVIDENCE

We begin with defendant's arguments challenging the sufficiency of evidence to support (1) his multiple conspiracy convictions; (2) any single conspiracy conviction; and (3) his felony grand theft conviction. To evaluate these claims, we review the whole record to determine whether there is " 'substantial evidence to support the verdict—i.e., evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.' " (*People v. Manibusan* (2013) 58 Cal.4th 40, 87.) We review the evidence " 'in the light most favorable to the prosecution and presume in support of the judgment

the existence of every fact the jury could reasonably have deduced from the evidence.' " (*Ibid.*)  Reversal on this ground is unwarranted unless " 'it appears "that upon no hypothesis whatever is there sufficient substantial evidence to support" the jury's verdict.' " (*Ibid.*)

## A.    Multiple Conspiracy Convictions

Defendant argues that there was insufficient evidence to support his three separate convictions for conspiracy (counts 1, 4, and 6).  Specifically, he argues that there was no evidence that he entered into three separate agreements to commit the various crimes against Paradise Pools.  The Attorney General concedes the merit of this argument.  We agree.

"It is well-settled that the essence of the crime of conspiracy is the agreement, and thus it is the number of the agreements (not the number of the victims or number of statutes violated) that determine the number of the conspiracies." (*People v. Meneses* (2008) 165 Cal.App.4th 1648, 1669 (*Meneses*).)  "The gist of the crime of conspiracy . . . is the agreement or confederation of the conspirators to commit one or more unlawful acts[.]" (*Braverman v. United States* (1942) 317 U.S. 49, 53.)

" 'Where two or more persons agree to commit a number of criminal acts, the test of whether a single conspiracy has been formed is whether the acts "were tied together as stages in the formation of a larger all-inclusive combination, all directed to achieving a single unlawful end or result." ' " (*Meneses, supra*, 165 Cal.App.4th at p. 1672.)  " 'Relevant factors to consider in determining this issue include whether the crimes involved the same motives, were to occur in the same time and place and by the same means,' and targeted a single or multiple victims." (*Ibid.*)

Here, there is no evidence that defendant entered into multiple agreements to commit the crimes of theft, vandalism, and burglary against

11

Paradise Pools, or that there were differing motives behind these various crimes. All of the crimes targeted the same victim and occurred in the same parking lot within a two-day window. We thus conclude that the evidence was insufficient to support defendant's three separate convictions for conspiracy.

While both parties agree that two of the conspiracy convictions should be stricken, they disagree on the procedure: defendant requests that this court strike his convictions for conspiracy to commit vandalism (count 4) and conspiracy to commit burglary (count 6), while the Attorney General suggests that the trial court should determine on remand which conspiracy conviction should remain.

An appellate court has broad discretion to reverse, affirm, or modify a judgment "as may be just under the circumstances." (§ 1260.) In *People v. Patrick* (1981) 126 Cal.App.3d 952, 965, the appellate court determined there was instructional error that allowed the jury to convict the defendant of two conspiracy offenses "based on exactly the same conduct." It exercised its discretion to affirm one of the conspiracy convictions, but strike the other. (*Id.* at p. 969.) Accordingly, we will exercise our discretion to modify the judgment and strike defendant's convictions for conspiracy to commit vandalism (count 4) and conspiracy to commit burglary (count 6).[2]

## B.    Remaining Conspiracy Conviction

Even after striking two of his conspiracy convictions, defendant argues that his remaining conviction for conspiracy to commit theft (count 1) should

---

[2] Given our conclusion, we need not address defendant's additional argument that instructional error allowed the jury to convict defendant on multiple counts of conspiracy without proof beyond a reasonable doubt of all the elements of each conspiracy.

also be reversed because there was insufficient evidence to establish the elements of conspiracy.

" 'A conviction of conspiracy requires proof that the defendant and another person had the specific intent to agree or conspire to commit an offense, as well as the specific intent to commit the elements of that offense, together with proof of the commission of an overt act "by one or more of the parties to such agreement" in furtherance of the conspiracy.' " (*People v. Jurado* (2006) 38 Cal.4th 72, 120.)

An express agreement is not required. (*People v. Johnson* (2013) 57 Cal.4th 250, 264.) "Evidence is sufficient to prove a conspiracy to commit a crime 'if it supports an inference that the parties positively or tacitly came to a mutual understanding to commit a crime.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1135 (*Rodrigues*).) Moreover, it is "seldom possible for the prosecution to offer direct evidence of an agreement to commit a crime" as the agreement is "usually made in secrecy." (*People v. Chavez* (1962) 208 Cal.App.2d 248, 253 (*Chavez*).) " 'The existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy.' " (*Rodrigues*, *supra*, 8 Cal.4th at p. 1135.) "The conspiracy must be inferred by the trier of fact from all the circumstances that are proven, and if the inference is a reasonable one it will not be disturbed on appeal." (*Chavez*, *supra*, 208 Cal.App.2d at p. 253.)

"Other than the agreement, the only act required is an overt act by *any* of the conspirators, not necessarily the defendant, and that overt act need not itself be criminal." (*People v. Smith* (2014) 60 Cal.4th 603, 616.) In other words, it is not necessary that a defendant be " 'present and personally participate with his co-conspirators in all or in any of the overt acts.' " (*People v. Morante* (1999) 20 Cal.4th 403, 417.) An overt act is defined as

13

" 'an outward act done in pursuance of the crime and in manifestation of an intent or design, looking toward the accomplishment of the crime.' " (*People v. Zamora* (1976) 18 Cal.3d 538, 549, fn. 8.) A single overt act can satisfy this element of conspiracy. (*People v. Ware* (2020) 52 Cal.App.5th 919, 939.)

Here, Neftali Sanchez testified that the blue pickup truck registered to defendant entered the Paradise Pools parking lot on the evening before the crimes occurred with its headlights off. He testified that there were two individuals in the truck, and that the passenger was "Caucasian" with a "big build" and a goatee. Even though Neftali Sanchez could not positively identify defendant as the passenger in a photo lineup, this evidence was sufficient to establish the "overt act" element as it proved that at least defendant's co-conspirator acted in furtherance of the thefts by driving the truck and previewing the property on April 6, 2018.

The evidence also showed that various tools and a Paradise Pools truck registration card were located in the garage where defendant resided. The truck registered to defendant contained a Paradise Pools gas card, defendant's work I.D. card, a mask, two-way radios with a headset, binoculars, a scanner, a box of latex gloves, an air jack, and a reciprocating saw. This evidence, along with the preview of the property shortly before the crimes occurred, supports the hypothesis that defendant had agreed to commit the thefts against Paradise Pools on April 7 and April 8, 2018.

In sum, we conclude that there was sufficient evidence to support a reasonable determination by the jury that the elements of conspiracy to commit theft (count 1) were established.

## C. Felony Grand Theft Conviction

Defendant argues that there was insufficient evidence to support his conviction for felony grand theft (count 2). Specifically, he contends that

14

there was no evidence as to the fair market value of the tools and other items stolen on April 7, 2018, and thus no evidence to establish the $950 threshold for the felony conviction. We agree.

"In determining the value of the property obtained, for the purposes of [theft offenses], the reasonable and fair market value shall be the test[.]" (§484, subd. (a).) The fair market value of an item is the "highest price" obtainable in the marketplace, as between "a willing buyer and a willing seller, neither of whom is forced to act." (*People v. Pena* (1977) 68 Cal.App.3d 100, 104.)

Here, no evidence was presented regarding the fair market value of the tools and other items stolen on April 7, 2018. Willems testified that none of the tools were new, but instead ranged from "barely used" to five or six years old. The only evidence as to value was Bishofberger's online research of the prices for *new* tools to replace the *used* tools that were stolen. There was no evidence about how to properly discount those prices to reach the fair market value of the used tools. Instead, the prosecutor argued in closing: "If you take all of them [the items stolen on April 7th totaling $5,540] and discount them 80 percent, that's still over the 950." The prosecutor's calculation of the maximum discount that would still satisfy the $950 threshold for felony grand theft is *not* evidence of fair market value.

The Attorney General makes two arguments to the contrary, neither of which we find persuasive. First, he argues that Bishofberger's pricing constituted sufficient evidence because there are circumstances in which the replacement price of an item may be used in lieu of its fair market value. In *People v. Renfro* (1967) 250 Cal.App.2d 921, 924, for example, the defendant was convicted of stealing cable used only by telephone companies, purchased from one of the few manufacturers of such cables, and made to particular

15

specifications for the company's use. The appellate court concluded that in such circumstances, where the stolen property has "a unique or restricted use and an extremely limited market, the actual or replacement cost to the one from whom it was stolen is its fair market value." (*Ibid.*) Unlike *Renfro*, however, the stools stolen here—including drills, screwdrivers, wrenches, tool bags, and extension cords—are not particularly "unique" or involve an "extremely limited" market. (*Ibid.*) This is not a circumstance where the fair market value should be equated with the replacement value.

Second, the Attorney General argues that the jurors could have used their "common sense" to draw inferences about the fair market value of the stolen items. In *People v. Ortiz* (2012) 208 Cal.App.4th 1354, 1359, for example, the defendants were convicted of carjacking and kidnapping two individuals in a two-year-old BMW. The appellate court concluded that the convictions were supported by substantial evidence, as the jury could reasonably infer that the defendants took the vehicle to pay off a large drug debt, and could rely on their common knowledge that such a vehicle would have substantial market value. (*Id.* at pp. 1365–1366.) Here, we are not convinced that the jurors possessed sufficient common knowledge of used tools, whose conditions were unknown, to be able to reasonably determine their fair market value.

In sum, we conclude that there was insufficient evidence to support the jury's finding that the fair market value of the items stolen on April 7, 2018 exceeded $950.[3] Upon reaching such a conclusion, an appellate court is

---

[3] Given our conclusion, we need not address defendant's additional arguments regarding the evidence and prosecutor argument on the value of the tools, or that instructional error allowed to the jury to convict defendant without proof beyond a reasonable doubt that the value of the stolen property exceeded $950.

16

"authorized to reduce the degree of the [felony grand theft] offense and fix the same only as petty theft, and thus avoid the necessity of a retrial." (*People v. Simpson* (1938) 26 Cal.App.2d 223, 229–230.) Accordingly, we modify the judgment to reduce defendant's conviction on count 2 from felony grand theft to misdemeanor petty theft, and remand for resentencing on this count.

## II.    MOTION FOR MISTRIAL

Defendant argues that the trial court abused its discretion in denying his motion for mistrial based on Detective Wade's statement that defendant had refused to provide his phone passcode. He contends that the statement violated his constitutional rights, and that the trial court should have provided the additional curative instruction he requested. The Attorney General acknowledges that the spontaneous statement was improper. He argues, however, that the statement did not involve constitutional error and does not warrant a mistrial, as the trial court correctly struck the statement and admonished the jury to disregard it.

Trial courts are " 'vested with considerable discretion in ruling on mistrial motions.' " (*People v. Jenkins* (2000) 22 Cal.4th 900, 986.) A mistrial should be granted if the trial court is " 'apprised of prejudice that it judges incurable by admonition or instruction.' " (*Ibid.*) " 'Juries often hear unsolicited and inadmissible comments and in order for trials to proceed without constant mistrial, it is axiomatic the prejudicial effect of these comments may be corrected by judicial admonishment; absent evidence to the contrary the error is deemed cured.' " (*People v. McNally* (2015) 236 Cal.App.4th 1419, 1428–1429 (*McNally*).) We review a ruling on a motion for a mistrial "for an abuse of discretion," recognizing that a motion for mistrial should be granted only when " ' " 'a [defendant's] chances of receiving a fair trial have been irreparably damaged' " ' " (*People v. Collins* (2010) 49 Cal.4th

17

175, 198 (*Collins*)) and where " ' "the improper subject matter is of such a character that its effect . . . cannot be removed by the court's admonitions" ' " (*McNally*, *supra*, 236 Cal.App.4th at p. 1429).

Defendant contends that his rights under the Fifth and Fourteenth Amendment of the United States Constitution were violated by Detective Wade's statement. He relies on *People v. Keener* (1983) 148 Cal.App.3d 73 (*Keener*) and *People v. Wood* (2002) 103 Cal.App.4th 803 (*Wood*) to support this position. In *Keener*, the trial court permitted the prosecution to introduce evidence showing defendant had refused to leave his apartment upon request of a SWAT team. (*Keener*, *supra*, 148 Cal.App.3d at p. 78.) Four SWAT officers then testified "to what can only be characterized as a siege of defendant's apartment," including "how they tried to coax Keener out of the apartment" and how he responded. (*Ibid.*) "Evidence of the siege was offered to show a consciousness of guilt; i.e., if defendant was not guilty he would have immediately surrendered." (*Ibid.*) *Keener* concluded that admission of such evidence violated defendant's privilege to be free from comment upon the assertion of a constitutional right. (*Ibid.*)

In *Wood*, a police officer testified that the defendant had refused entry onto his property when asked by the officer. (*Wood*, *supra*, 103 Cal.App.4th at p. 807.) The testimony was given after the trial court overruled defense counsel's objections under the Fifth and Fourteenth Amendment. (*Ibid.*) *Wood* concluded that the objections should have been sustained because defendant's invocation of his constitutional rights was "improperly being used for the purpose of showing he had something to hide, or, in other words, demonstrating his consciousness of his guilt." (*Id.* at p. 809.) "In effect, the testimony punished defendant for asserting his right to have the officer obtain a warrant." (*Ibid.*)

18

We are not convinced that the facts here give rise to the constitutional error identified in *Keener* and *Wood*. As the trial court explained, Detective Wade's statement regarding defendant's refusal to provide his passcode was made during *cross-examination*. While Detective Wade had testified on direct that defendant's cell phone was locked, the prosecutor did not elicit any testimony regarding a request that defendant provide his passcode, or any refusal of such a request. On cross-examination, the line of questioning leading up to Detective Wade's statement made clear that defense counsel was attacking the thoroughness of the investigation and Detective Wade's competency, by providing examples of how Detective Wade could have obtained information from the phone without having the passcode. These questions regarding access to defendant's phone were not asked for the purpose of showing defendant's consciousness of guilt.

Moreover, we agree with the trial court that any error arising from Detective Wade's statement was harmless. Given our rejection of defendant's constitutional error argument, the denial of defendant's mistrial motion is subject to harmless error analysis under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). (*People v. Welch* (1999) 20 Cal.4th 701, 749–750.) Under this standard, we must ask whether it is "reasonably probable that the jury was influenced by such evidence to defendant's prejudice, or that the admission of such evidence affected the verdict." (*Watson*, *supra*, 46 Cal.2d at p. 837.)

As a preliminary matter, we conclude it was not "reasonably probable" that the jury was affected by Detective Wade's statement to defendant's prejudice. (*Watson*, *supra*, 46 Cal.2d at p. 837.) Detective Wade testified that a phone can contain data that may either exonerate or prove the guilt of an individual. Thus, Detective Wade's comment did not necessarily suggest defendant's consciousness of guilt. (See *Wood*, *supra*, 103 Cal.App.4th at p.

19

809.) More importantly, the comment was not admitted into evidence. "It is the general rule that when an unexpected answer of a witness, which could not be anticipated by objection to the question, contains inadmissible and prejudicial matter, a motion to strike it out is the proper remedy." (*People v. Glass* (1954) 127 Cal.App.2d 751, 753.) The trial court granted defense counsel's motion to strike Detective Wade's statement, and admonished the jury to disregard it.

Finally, defendant argues that the trial court abused its discretion in declining to provide an additional curative instruction. In his motion for mistrial, defendant requested that the trial court further instruct the jury that Detective Wade's testimony "was not truthful" and repeat its instruction that the testimony should be disregarded. Defendant offers no authority (in his underlying motion or on appeal) to support this argument, and does not address the conflict between his proposed additional instruction and the instruction that the jury "alone, must judge the credibility or believability of the witnesses." We thus reject the argument.

In sum, we conclude that the trial court did not abuse its discretion in denying defendant's motion for mistrial.

## III. EVIDENTIARY RULING ON REFRESHING RECOLLECTION

Defendant argues that the trial court abused its discretion in overruling defense counsel's objection and allowing the prosecutor to improperly refresh the recollection of Hugo Sanchez as to the location of the iPad ping using a police report that contained hearsay. We review the trial court's evidentiary ruling for an abuse of discretion. (*People v. Waidla* (2000) 22 Cal.4th 690, 717.)

"A witness may refer to hearsay to refresh his recollection; however, before doing so the witness must testify he cannot remember the fact sought

to be elicited." (*People v. Lee* (1990) 219 Cal.App.3d 829, 840.) When asked if he could remember the street where the iPad pinged, Hugo Sanchez did *not* testify that he could not remember this fact. Instead, he responded: "If I'm not mistaken, it's -- I want to say it's Grove." At this point in his testimony, there was no basis to refresh his recollection with the police report and the trial court erred in overruling defense counsel's objection.

We conclude, however, that the error was harmless. Another witness, Ramon Espinosa, testified that his phone was used to ping the missing iPad and that he took a screenshot of the location. Espinosa testified that the ping was located on Dover in Vacaville. In light of this additional testimony, it was not "reasonably probable" that defendant would have obtained a more favorable result absent the error. (*Watson*, *supra*, 46 Cal.2d at p. 837.) We thus conclude that the trial court did not abuse its discretion in overruling defense counsel's objection.[4]

## IV.   Minute Order and Sentencing on Misdemeanors

Defendant argues that the minute order from the sentencing hearing contains a clerical error, as the conviction on count 3 was for misdemeanor petty theft, *not* felony grand theft. The Attorney General concedes that the minute order incorrectly reflects both a felony offense and felony term ("Low term of 16 months, stayed pursuant to 654 PC") for count 3. He contends, however, that the trial court made a sentencing error on both count 3 and count 12 that requires remand, not just correction of the clerical error. He argues that the trial court erred because it did not sentence defendant on either of these misdemeanor convictions. We agree.

---

[4] Having concluded that defendant's specific challenges to the testimony of Detective Wade and Hugo Sanchez yield no prejudicial error, we need not address defendant's argument that his convictions should be reversed for cumulative error.

21

Section 12 provides: "The several sections of this Code which declare certain crimes to be punishable as therein mentioned, devolve a duty upon the Court authorized to pass sentence, to determine and impose the punishment prescribed." Pursuant to this duty, the trial court " 'must either sentence the defendant or grant probation in a lawful manner; it has no other discretion.' " (*People v. Alford* (2010) 180 Cal.App.4th 1463, 1468 (*Alford*).)

The record from the sentencing hearing reflects that the trial court did not fully discharge this duty. The trial court sentenced defendant on all seven felony convictions, imposing a sentence of three years for count 7, and imposing but staying a sentence of 16 months on the other six felony counts. On the two misdemeanor convictions, however, the trial court stated it was "simply going to deny probation." Upon denial of probation, the trial court should have sentenced defendant on these two counts. (See *Alford*, *supra*, 180 Cal.App.4th at p. 1468 [explaining that a trial court must sentence a defendant on all counts, even if it ultimately stays the sentence].) Accordingly, we remand for sentencing on defendant's convictions for misdemeanor petty theft (count 3) and identity theft (count 12).

## DISPOSITION

The judgment is modified to strike defendant's convictions for conspiracy to commit vandalism (count 4) and conspiracy to commit burglary (count 6), and to reduce defendant's conviction for felony grand theft to misdemeanor petty theft (count 2). We remand for resentencing on this misdemeanor petty theft conviction (count 2), and also for sentencing on defendant's convictions for misdemeanor petty theft (count 3) and identity theft (count 12). Following remand, the trial court is directed to prepare an amended minute order that reflects the above modifications to the judgment, as well as defendant's resentencing on the misdemeanor petty theft

conviction (count 2), and defendant's sentencing on the misdemeanor petty theft conviction (count 3) and identity theft conviction (count 12).  In all other respects, the judgment is affirmed.

                           _____

                              Petrou, Acting P.J.

WE CONCUR:

_____

Jackson, J.

_____

Wiseman, J.*

*People v. Fernandez/A160192*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.